**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BILL SCOTT MURRAY,**

   **Plaintiff,**

v.               **Civil Action 2:20-cv-4488
Judge Michael H. Watson
Magistrate Judge Kimberly A. Jolson**

**COMMISIONER OF
SOCIAL SECURITY,**

   **Defendant.**

**REPORT AND RECOMMENDATION**

   Plaintiff brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB").  For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 18) and **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**

   Plaintiff filed his DIB application in 2018, alleging that he became disabled on August 14, 2017.  (Tr. 163–64).  After Plaintiff's applications were denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing on September 12, 2019, and issued a decision on November 12, 2019, denying Plaintiff's applications.  (Tr. 31–63, 12–30).  The Appeals Council declined to review that unfavorable determination, and thus, it became final for purposes of judicial review.  (Tr. 1–6).

   On August 30, 2020, Plaintiff initiated this action.  (Doc. 1.)  The Commissioner filed the administrative record on March 17, 2021 (Doc. 12).  Thereafter, Plaintiff filed his Statement of

Errors (Doc. 18) and the Commissioner filed an Opposition (Doc. 20). Plaintiff did not file a Reply. Therefore, the matter is now ripe for review.

### A. Plaintiff's Testimony

The ALJ summarized Plaintiff's September 12, 2019, hearing testimony.

> At the hearing, claimant testified to a history of lumbar and cervical discomfort associated with right shoulder injury sustained while working, which has resulted in an inability to work. He testified to some discomfort with walking, stating that he uses a cane sometimes, but not very often at home. Claimant complained his doctor will not prescribe medication for him. Per his hearing testimony, he mostly lays down during the day. He reported receiving assistance with chores, complained of difficulty with grocery shopping aswell as pain with sleeping; said he cannot reach overhead with his arms; described experiencing numbness, weakness, and swelling in the legs and feet; reported tingling in the fingers with frequent dropping of items; and, when possible uses a handrail for stability. Claimant further testified to difficulty putting on shoes, as well as opening a jar and picking up coins, and that he is essentially unable to care for his daughter secondary to the effects of his impairments.

(Tr. 19–20).

### B. Relevant Medical History

The ALJ also summarized the relevant medical evidence.

> According to the record, claimant reports initially sustaining injury while at work in early August 2017, at which time, a box was reported to have fallen on his right shoulder. When seen in the emergency room on August 8, 2017, claimant described pain intensity level of 7 out of 10 with discomfort radiating down the shoulder to the left hand, with some associated numbness and tingling in the fingers . . . . He denied any prior injury to the shoulder and said he had not taken any medication prior to the examination. Claimant had no other complaints. Musculoskeletal examination was positive for some tenderness to the anterior right shoulder, but with claimant exhibiting normal range of motion, full 5/5 grip strength, and no edema or crepitus . . . . Sensation was slightly diminished in the fingers on the right, but generally intact overall. Right shoulder x-ray was unremarkable and absent any acute osseous abnormalities, and claimant was given ibuprofen in the emergency room . . . . As of October 13, 2017, claimant had completed a course of chiropractic treatment, with claimant continuing to report some discomfort to the site, but also with reports of improvement in pain intensity level and radiation of pain . . . . Related reports also reference improved back pain (no longer sharp, radicular-type), increase in cervical extension, increased strength during muscle testing, and improvement in lumbar range of motion . . . .

A January 2018 examination in connection with a worker's compensations claim yielded a primary assessment of cervical sprain . . . . Claimant had some pain on range of motion of the right shoulder, along with some spasm and tenderness in the right paracervical region and lumbar spine; straight leg raising was negative. The following month, cervical MRI did show neural foraminal narrowing at C5-C6 due to facet and uncoverteral joint hypertrophy, but with no abnormal spinal cord signal intensity . . . . Lumbat MRI revealed mild to moderate central stenosis at L4/5 with some disc effusion at L5/S1 . . . . MRI of the right shoulder in the same month revealed small partial thickness tear . . . . On follow-up of the neck, low back, and right shoulder on March 21, 2018, claimant reported some continued discomfort in the areas, but he remained grossly intact neurovascularly and had no muscle atrophy . . . . During the same examination, claimant declined use of brace/splint, cane/walker, or any other device . . . . Noteworthy, in a March 23, 2018 letter from chiropractor Jeffrey S. Hudson, DC, who had previously treated claimant, he specifically noted improvement with treatment of chiropractic manipulation and rehabilitative therapies . . . .

Further noteworthy is the June 7, 2018, report of Dr. Rajesh Madan, M.D., that indicates "claimant returns after an interval of 2 years reporting workplace injury, with back and shoulder pain since the initial incident (Exhibit 7F, page 16). The same report mentions a prior diagnosis of hypertension but with claimant not following up for 2 years and also with claimant not being on anany blood pressure medication. There was some cervical and lumbar tenderness noted on exam, but gait was normal and there were no indications for any significant sensory or motor deficits . . . . According to the examination report, claimant was not on any pain medication at the time . . . . The report references right shoulder pain, but with no report of related abnormalit y on exam. As of June 28, 2018, claimant had been started on duloxetine for chronic pain symptoms and he was tolerating the medication well and found it beneficial . . . .

As of late August 2018, claimant was seeking an orthopedic specialist with reports that he was using Naxproxen intermittently . . . He subsequently underwent orthopedic examination on September 19, 2018, with the examination positive for some tenderness in the acromioclavicular joint, along with positive drop arm and impingement tests . . . . Sensation was normal, erythema was absent and range of motion was not significantly limited . . . . Left shoulder exam was normal and claimant had normal left shoulder range of motion with no tenderness experienced. Claimant ambulated with normal gait and had appropriate balance.

As of the December 2018 physical examination conducted in connection with a worker's compensation claim, claimant had not had any physical therapy or injections for the right shoulder and was not receiving any assistive device . . . . He was only taking Ibuprofen as needed for pain. Toe and heel walking were normal; straight leg raising was negative with no sensory deficit; there was no shoulder crepitus; and hip examination was normal . . . . On March

3

> 19, 2019, claimant reported he was seeing a spine specialist, but there was no imaging or specialty reports available for review . . . . The same report mentions claimant was started on gabapentin for radiculopathy symptoms; however, again, with no indication for any extensive gait abnormalities, significant loss of range of motion in the upper or lower extremities, or in the lumbar and cervical spines, or significant sensory or motor deficits. During the April 4, 2019 follow-up, claimant reported gabapentin was helpful for his neck and lower back pain, and he denied any worsening of symptoms . . . .
>
> Following a subsequent neurology examination on April 23, 2019, claimant was diagnosed with cervical stenosis with radiculopathy, resulting in a recommendation for spinal decompression at C5-6 due to reported failure to improve conservatively
> . . . . There was some weakness noted in the biceps on the right, as compared with the left, with decreased sensation noted in the C6 distribution on the right. Gait was normal with no ataxia. Shortly thereafter, during a general adult medical examination in early June 2019, physical examination was unremarkable, with claimant ambulating with normal gait, and with the examination absent any tenderness or edema reported in the back or extremities . . . . In fact, the examiner specifically referenced the exam as an "unremarkable physical examination" . . . . As of the July 10, 2019 follow-up, claimant's blood pressure had been stable on amlodipine and losartan, and gabapentin remained helpful for reported low back and right arm pain . . . . Physical examination remained well within normal limits, with claimant ambulating with normal, unassisted gait, and with the extremities remaining absent any edema . . . . Claimant remained neurologically intact . . . .

(Tr. 21–22).

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through December 31, 2023, and that he had not engaged in substantial gainful employment since August 14, 2017, the alleged date of onset. (Tr. 17). The ALJ also determined that Plaintiff suffered from the following severe impairments: cervical and lumbar degenerative disc disease. (Tr. 18). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 19).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

After careful consideration of the entire record, I find that the claimant has the

> residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except, he can lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 ours, stand for 6 hours, and walk for 6 hours; push/pull within the limitations for lift/carry; and occasionally reach overhead to the right, and frequently for all other reaching to the right.

(*Id.*)

When assessing Plaintiff's RFC, the ALJ considered and analyzed the prior administrative findings from the state agency reviewers.

> I have considered the April and July 2018 opinions of the State Agency medical consultants, at Exhibits 1A and 3A. These examiners found a general maximum exertional capacity for light work, with additional postural and manipulative restrictions. These opinions are persuasive only to the extent consistent with the indicated residual functional capacity. In evaluating the persuasiveness, supportability and consistency of these opinions with the preponderance of the objective medical and other evidence in the file, I conclude, the overall opinion restricting claimant to light exertion with some manipulative restrictions is consistent with the evidence. MRI of the right shoulder in February 2018 revealed small partial thickness tear . . . . Following aneurology examination on April 23, 2019, claimant was diagnosed with cervical stenosis with radiculopathy, resulting in a recommendation for spinal decompression at C5-6 due to reported failure to improve conservatively . . . . There is no indication claimant had any surgical intervention or related therapy, or other specialized treatment thereafter. I find the record is no supportive of any additional postural limitations, as found by State Agency. Except for some reported tenderness, lumbar examinations are relatively unremarkable and there are no indications for any gait abnormalities.

(Tr. 23).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff was unable to perform any past relevant work experience. (Tr. 24). Further, relying on the VE's testimony, the ALJ determined that given Plaintiff's age, education, work experience and RFC, he was able to perform work that existed in significant numbers in the national economy, such as a bench assembler, electronics worker, or routing clerk. (Tr. 25). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August

5

14, 2017, through the date of the decision.  (Tr. 26).

## II.   STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g).  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.   DISCUSSION

Plaintiff alleges the ALJ erred by: (1) not classifying Plaintiff's shoulder impairments as "medically determinable" impairments at step two (Doc. 18 at 10–13); (2) improperly evaluating Plaintiff's impairments under Listing 1.04A at step three (*id.* at 5–10); and (3) making an RFC determination that was not supported by substantial evidence at step four (*id.* at 13–15). The Undersigned considers each assignment of error in turn.

### A.  Shoulder Impairment at Step Two

An ALJ must make several determinations at step two.  First, an ALJ must consider if a claimant's impairment constitutes a "medically determinable" impairment, i.e., an impairment that results from anatomical, physiological or psychological abnormalities that can be shown by

6

medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520; 404.1521. If an impairment is medically determinable, then an ALJ must determine whether it is severe. *Id.* A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

Plaintiff argues that the failure to classify an impairment as medically determinable should be subject to a different standard of review than the failure to classify an error as severe. (Doc. 18 at 12) ("The error is different than the ALJ merely mischaracterizing a severe impairment, as a non-severe impairment, because, in such a situation, the non-severe impairment would still receive consideration throughout the evaluation process."). True, when "an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017). But when the ALJ does consider the evidence supporting the impairment when crafting the RFC,

7

as the ALJ did here, the harmless-error analysis should be the same. In other words, Plaintiff's argument "raises a distinction without a difference . . . ." *Fresquez v. Comm'r of Soc. Sec.*, No. 1:18cv114, 2019 WL 1440344 at *1 (S.D. Ohio Mar. 31, 2019) (declining to apply a different harmless-error analysis when the ALJ did not list plaintiff's chronic fatigue syndrome as a medically determinable impairment at step two yet considered it nonetheless in the RFC).

Plaintiff is correct that the ALJ did not classify his purported right shoulder impairment as medically determinable at step two. (*See* Tr. 18– 19). Yet, the ALJ expressly considered that impairment and its effect on Plaintiff's ability to work.

The ALJ began by noting that Plaintiff "testified to a history of lumbar and cervical discomfort associated with right shoulder injury sustained while working, which has resulted in an inability to work." (Tr. 19). Plaintiff visited the emergency room in 2017 after sustaining this injury at work, and the ALJ reviewed that emergency room record, noting that Plaintiff "described a pain intensity level of 7 out of 10 with discomfort radiating down the shoulder to the hand" and a "[m]usculoskeletal examination was positive for some tenderness to the anterior right shoulder, but with [Plaintiff] exhibiting normal range of motion, full 5/5 grip strength, and no edema or crepitus." (Tr. 20 (citing Tr. 241, 243)). Additionally, the "[r]ight shoulder x-ray was unremarkable and absent any acute osseous abnormalities[.]" (*Id.* (citing Tr. 243)).

Within a few months, the ALJ noted, Plaintiff "completed a course of chiropractic treatment, with [Plaintiff] continuing to report some discomfort . . ., but also with reports of improvement to pain intensity level and radiation of pain." (*Id.* (citing Tr. 303)). Those reports also referenced improved "cervical extension, increased strength during muscle testing, and improvement in lumbar range of motion." (*Id.* (citing Tr. 303)).

In 2018, examinations in connection with a worker's compensation claim demonstrated similar reports of discomfort, with supporting and non-supporting medical evidence. The initial examination "yielded a primary assessment of cervical sprain." (*Id.* (citing Tr. 349)). And a follow-up MRI "revealed small partial thickness tear" of a tendon in Plaintiff's right shoulder. (*Id.* (citing Tr. 287). Several subsequent examinations, however, were "unremarkable" without "related abnormality on exam." (Tr. 21–22 (citing Tr. 378, 367, 439–40)). Ultimately, the ALJ found that the "bulk of related evidence concerning [Plaintiff's] musculoskeletal complaints is absent . . . significantly limited lumbar or cervical range of motion or range of motion in the extremities . . . or significantly reduced motor strength." (Tr. 22). Particularly, "[r]elated physical examinations show no significant difficulties with use of the right hand/shoulder/arm[.]" (*Id.*). So the ALJ found "the overall opinion restricting [Plaintiff] to light exertion with some manipulative restrictions [ ] consistent with the evidence." (Tr. 23).

Thus, regardless of whether the ALJ explicitly designated Plaintiff's shoulder impairment as a medically determinable impairment, the ALJ considered the impairment when assessing the medical evidence and deciding how his impairments impacted his ability to work. And that is all the ALJ is required to do.

When the RFC analysis considers all a plaintiff's impairments, a failure to categorize a particular impairment as severe or non-severe (or medically determinable) is harmless. *King v. Comm'r of Soc. Sec.*, No. 2:15-CV-2225, 2016 WL 3437379, at *4 (S.D. Ohio June 22, 2016), *report and recommendation adopted,* No. 2:15-CV-2225, 2016 WL 3689898 (S.D. Ohio July 12, 2016). Courts can and should engage in the harmless-error analysis, especially when the Commissioner makes the argument, as is the case here. (Doc. 20 at 4); *see, e.g.*, *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless

9

formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" (quoting *Nat'l Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)); *id.* (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")). So, to the extent the ALJ failed to classify Plaintiff's shoulder impairment expressly as a medically determinable impairment, any such error was harmless. Plaintiff has not shown that the ALJ failed to consider the shoulder impairment's impact on his ability to work and thus has failed to show reversible error.

### B. Listing 1.04A at Step Three

Listing 1.04A describes:

> [d]isorders of the spine . . . , resulting in compromise of a nerve root . . . or spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.

Plaintiff says he "put forth sufficient evidence to demonstrate that his impairments meet and/or equal Listing 1.04." (Doc. 18 at 6). He further alleges that the ALJ failed to properly explain how he concluded from the evidence that Plaintiff failed to meet the listing, and that his decision was thus not supported by substantial evidence. (*Id.* at 9). In response, Defendant says that the ALJ, relying on objective medical evidence, supported his conclusion that Plaintiff did not meet the listing. (Doc. 20 at 7–8). The Undersigned finds the ALJ's conclusion is supported by

10

substantial evidence.

> Specifically, the ALJ concluded:
>
> Claimant does not have an impairment that meets or medically equals the severity requirements of any of the listed impairments, including Sections 1.02 (*Major Dysfunction of a Joint*) and 1.04 (*Disorders of the Spine*). Neither claimant nor his representative have met the burden of presenting medical evidence that supports a finding of listing level severity. I have reviewed the medical evidence of record in its entirety and find that when considered individually or in combination, the record does not contain medical findings obtained on clinical examination or special study that are the same as or equal to any of those listed in any subsection of the Listing of Impairments.

(Tr. 19).

In support of meeting the listing, Plaintiff cites testimony and medical records suggesting his "difficulty with ambulation due to leg weakness; numbness; and paresthesia[,]" as well as "inability to perform fine and gross movements effectively, with his right upper extremity, due to cervical radiculopathy, numbness, and tingling." (Doc. 18 at 8–9).

The ALJ considered the same. Specifically, he noted that Plaintiff "testified to a history of lumbar and cervical discomfort . . . discomfort with walking, stating he uses a cane sometimes . . . said he cannot reach overhead with his arms . . . [and] described experiencing numbness, weakness, and swelling in the legs and feet[.]" (Tr. 19–20). Yet, he found that Plaintiff's "subjective complaints lack sufficient objective medical evidence and other support." (Tr. 20). For instance, he noted multiple medical records in which there were no indications of motor loss or muscle atrophy, nor sensory or reflex loss. (Tr. 20 (citing Tr. 303); Tr. 20–21 (citing Tr. 345); Tr. 21 (citing Tr. 376); *id.* (citing Tr. 367)). He also identified many medical records which indicated Plaintiff's ambulation was normal. (Tr. 21 (citing Tr. 376); *id.* (citing Tr. 406); *id.* (citing Tr. 351); *id.* (citing Tr. 367); Tr. 21–22 (citing Tr. 439–40); Tr. 22 (citing Tr. 435)).

11

In sum, the ALJ appropriately considered the evidence before him, including that which Plaintiff identifies as most significant in his statement of errors. And the evidence he based his conclusion on is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion that Plaintiff's impairments did not rise to the level described in Listing 1.04. The Undersigned therefore finds that the ALJ's opinion is supported by substantial evidence.

Plaintiff further argues, however, that the ALJ did not explain his decision as required by *Reynolds v. Commissioner of Social Security*, 424 F. App'x 411 (6th Cir. 2011). (Doc. 18 at 9–10). In that case, the Sixth Circuit made clear that when an ALJ evaluates whether a claimant meets a listed impairment, the ALJ must "actually evaluate the evidence," compare it to the proper listing, "and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 Fed. App'x at 416. Here, the ALJ did what was required.

First, it should be noted that the failure to explain in *Reynolds* was extreme. There, the ALJ began his step-three analysis with a conclusion that the claimant failed to meet two different listings, but then proceeded to analyze only one of the two listings. *Id.* at 415. In other words, he "skipped an entire step of the necessary analysis[,]" and provided no explanation of his previously stated conclusion. *Id.* at 416. Here, after the ALJ concluded that Plaintiff's impairment did not meet Listing 1.04, he provided the precise reason why: because the record did not establish the evidence of nerve root compression required by the listing. (Tr. 19 (". . . the medical evidence of record in its entirety . . . does not contain medical findings obtained on clinical examination or special study that are the same as or equal to any of those listed in any subsection of the Listing . . . .")). He then further detailed his review of the medical evidence as it relates to nerve root compression, including motor loss and ambulation (Tr. 19–24). In short, nothing about the ALJ's explanation obscures his reasoning or prevents "meaningful judicial review."

12

Because the ALJ's conclusion that Plaintiff's impairment did not meet Listing 1.04 was supported by substantial evidence and was properly explained, the Undersigned finds no reversible error.

### C. Residual Functional Capacity

Because the Undersigned finds no reversible error at the preceding steps, the ultimate inquiry is whether substantial evidence supports the RFC fashioned by the ALJ. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July 2, 1996). The Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

Here, the ALJ determined that Plaintiff had the RFC to perform light work. (Tr. 19). Plaintiff argues that the RFC is "not supported by substantial evidence because the evidence documents that [he] lacks the ability to stand and/or walk for 6 hours out of an 8-hour workday[,]" which is a defining component of light work. (Doc. 18 at 14). True, "a job is in [the light-work] category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). But the ALJ found "the bulk of related evidence . . . is absent findings for ongoing gait abnormalities [and] inability to bear own weight . . ." (Tr. 22). He further found no evidence supporting Plaintiff's

13

testimony regarding the need of a cane when walking or the need to lie down during the day. (Tr. 23).

As detailed above, the ALJ cited to numerous medical records suggesting normal ambulation. Additionally, he relied in part on the opinions of two state agency physicians, both of whom found that Plaintiff could stand or walk for six hours in an eight-hour workday. (Tr. 23; Tr. 70; Tr. 84). Thus, there is such relevant evidence in the record that a reasonable mind might accept as adequate to support the conclusion that Plaintiff could stand or walk for six hours in an eight-hour workday.

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). Here, the ALJ's RFC finding is supported by substantial evidence.

### IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 18) and **AFFIRM** the Commissioner's decision.

### V. PROCEDURE ON OBJECTIONS

14

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: November 18, 2021                              /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE